**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-00782-CMA

TODD R. JOHNSON,

      Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

      Defendant.

---

## ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION

---

This matter is before the Court on Plaintiff Todd R. Johnson's appeal of the Commissioner's November 18, 2009 decision denying his claim for Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34 and 1381-83. Jurisdiction is proper under 42 U.S.C. § 405(g).

## I.    BACKGROUND

Plaintiff Todd Johnson was born on November 27, 1961, and was 46 years old on the amended alleged onset disability date of November 29, 2007.[1] Plaintiff has at least a high school education and has past relevant work as a cashier at a gas station, manufacturer of bottle parts, and security guard. (AR 48-49.) Plaintiff has also

---

[1] Plaintiff originally listed his onset disability date as May 1, 2005 and amended this date at the August 6, 2009 Hearing. (AR 30.)

performed jobs in painting, such as construction painting and wall covering painting. (AR 49.)

Plaintiff alleges disability due to extreme pain resulting from a work injury that occurred in 2002, post-laminectomy syndrome including left L5-S1 radiculitis, chronic and intractable pain resulting in chronic narcotic pain management, nerve damage resulting in foot drop requiring the use of an ankle brace, adult-onset diabetes, obesity, and depression. (Doc. # 12 at 7-8.)[2]

Plaintiff applied for Disability Insurance (Title II) and Supplemental Security Income (Title XVI) benefits on January 5, 2006. Plaintiff had alleged an onset disability date of May 1, 2005. His claims were initially denied on February 26, 2008. Plaintiff subsequently requested a hearing, which was held on August 6, 2009.

At the hearing, Plaintiff amended his alleged onset disability date to November 29, 2007. Plaintiff testified as to the nature of his disabilities and his daily activities, which consist of spending about 18 hours a day in bed, during which time he reads or watches cartoons. (AR 41-42.) A Craftmatic bed, which has massage and heat functions, minimizes his pain. (AR 47.) A couple of years ago, he used to help his mother with light household chores as a way to pay the rent for his room in his mother's house. Such chores included washing dishes, vacuuming, cleaning the sinks, dusting the television set, bringing in the mail, and carrying in bags of groceries. (AR 41-42.)

---

[2] All page number citations are to the numbering used by the Court's CM/ECF docketing system and not to the document's original numbering.

He testified that he stopped doing that work "about a year-and-a-half ago" when his

depression got worse.  (AR 42.)  About once a month, Plaintiff will care for his eight-

month old grandson, which entails feeding and bathing him.  Although Plaintiff's

psychologist had recommended that he take aqua exercise classes at the local

recreation center to help with his depression and physical ailments, he had to stop

taking those classes due to his inability to pay for them.  (AR 35.)  Plaintiff misses a

lot of his insulin shots and fails to eat properly due to his depression; his depression

causes him to spend so much time in bed.  (AR 35, 47.)  Plaintiff described his pain as

being at the "level of five all day long."  (AR 46.)  Plaintiff stated that he could only sit

for about 20 minutes without getting up and he could only walk for about 20 minutes

without having to sit down.  (*Id.*)

A vocational expert also testified at the hearing.  He opined on the following

hypothetical question posed by the ALJ:

> [A] hypothetical person, 47 years of age, high school-level education,
> same past work experience as [Plaintiff], and ability to do sedentary work
> with the following specific restrictions and requirements.  Not required to
> stoop or crouch more than occasionally, not required to climb, balance,
> crawl, or kneel.  Not required to sit for more than 30 minutes at one time
> without the opportunity to stand.  Not required to push or pull with the feet.
> Not required to work at unguarded heights, and unguarded hazardous
> mechanical equipment.  Not required to understand, remember and
> carry out more than detailed instructions.

(AR 49.)  The vocational expert concluded that such an individual would not be able

to perform any of Plaintiff's past relevant work, but that the individual would be able to

perform jobs in the national economy, namely an order clerk of food and beverages and

an assembler.  (AR 49-50.)

On November 18, 2009, the ALJ – evaluating Plaintiff's claim in terms of the five-

step process called for in the regulations[3] – issued a decision, finding that Plaintiff was

not disabled.  (AR 10-21.)  The ALJ determined that:

(1)     At step one, Plaintiff "has not engaged in substantial gainful activity since May 1, 2005, the alleged onset date;"

(2)     At step two, Plaintiff has the following severe impairments: post-laminectomy syndrome, obesity, diabetes mellitus, and depression;

(3)     At step three, Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

(4)     Plaintiff has the RFC to perform sedentary work, as defined in 20 C.F.R. 404.1567(a) and 416.967(a), with no sitting for more than thirty minutes at one time without the opportunity to stand, with only occasional stooping or crouching, with no climbing, balancing, crawling, or kneeling, with no pushing and/or pulling with the bilateral feet, with no requirement to work at unguarded heights or near unguarded hazardous mechanical equipment; and with no requirement to understand, remember, or carry out more than detailed instructions;

(5)     At step four, Plaintiff is unable to perform his past relevant work;

(6)     At step five, given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform and, therefore, Plaintiff has **not** been under a disability, as defined under the Social Security Act, from his **original** disability date, May 1, 2005 through the date of the decision.

---

[3]  20 C.F.R. § 404.1520(a)(4).

On December 30, 2009, Plaintiff filed a request with the Appeals Council for review, which the Council denied on February 4, 2010.  (AR 1-6.)  On April 6, 2010, Plaintiff filed a civil complaint, seeking judicial review of the denial of Social Security benefits.  (Doc. # 3.)  The Social Security Administrative Record was filed with the Court on June 14, 2010.  (Doc. # 8.)  On July 29, 2010, Plaintiff filed his Opening Brief.  (Doc. # 12.)  Defendant, the Commissioner of Social Security, responded on August 31, 2010. (Doc. # 14.)  Plaintiff replied on September 15, 2010.  (Doc. # 16.)  On November 29, 2010, the parties presented oral argument to the Court; the Court reserved ruling.

In this appeal, Plaintiff contends that the ALJ erred in the following six ways: (1) he failed to analyze properly the opinions of Plaintiff's treating physicians and medical providers pursuant to the regulations and case law; (2) he failed to analyze whether the number of jobs that existed in the national economy were significant pursuant to the regulations and case law; (3) he failed to identify adequately the jobs he cited at step five; (4) he failed to indicate which Listings he considered at step three; (5) he failed to find that Plaintiff's spinal impairment met or equaled Listing 1.04 despite clear evidence that he met that Listing; and (6) he failed to base his findings regarding Plaintiff's credibility in substantial evidence.

## II.     STANDARD OF REVIEW

### A.     Review of the Commissioner's Decision

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct

legal standards were applied. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  It requires more than a scintilla, but less than a

preponderance." *Id.* (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)).

The Court does not re-weigh the evidence or substitute its judgment for that of the

Commissioner. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

**B.**    **Evaluation of Disability**

The qualifications for disability insurance benefits under the Social Security Act

are that the claimant meets the insured status requirements, is less than sixty-five years

of age, and is under a "disability."  *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).

The Social Security Act defines a disability as an "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last

for a *continuous* period of not less than *twelve* months."  42 U.S.C. § 1382c(a)(3)(A)

(2006) (emphasis added).  "Substantial gainful activity" means sustained activities in

a work setting on a "regular and continuing basis," namely 8 hours a day, for 5 days a

week, or an equivalent work schedule.  S.S.R. 96-8p; *see also Proctor v. Astrue*, 665

F. Supp. 2d 1243, 1251 (D. Colo. 2009) (citing *Haga v. Astrue*, 482 F.3d 1205, 1208

(10th Cir. 2007)).  "[A] medical finding of disability is not based solely on objective test

results. It includes an evaluation of the patient's medical history and the physician's

observations of the patient, and necessarily involves an evaluation of the

credibility of the patient's subjective complaints of pain. A medical opinion based on all of these factors is medical evidence supporting a claim of disabling pain, even if the objective test results, taken alone, do not fully substantiate the claim." *Nieto v. Hecker*, 750 F.2d 59, 61-62 (10th Cir. 1984).

III.   **ANALYSIS**

   A.   **First Issue: Whether the ALJ Failed to Analyze Properly the Opinions of Plaintiff's Treating Physicians and Medical Providers**

Plaintiff argues that the ALJ failed to evaluate properly the opinion evidence of his treating sources, namely: (1) Dr. Scott Hompland; (2) Dr. Steve Kolpaks and Michele Lande, FNP; (3) Nurse Practitioner James Sampson; and (4) Dr. David Benson.

   1.   Dr. Scott Hompland

Plaintiff contends that the ALJ improperly analyzed the opinions of Dr. Hompland in the following three ways: (1) the ALJ improperly concluded that Dr. Hompland's opinions contained within a November 5, 2006 Medical Source Statement of Ability to Do Work-Related Activities ("November 2006 Medical Source Statement") were inconsistent with Dr. Hompland's opinions contained within a Colorado Department of Human Services Med-9 form, dated on January 3, 2008 ("January 2008 Med-9 Form"); (2) the ALJ improperly concluded that Dr. Hompland's January 3, 2008 notations showed Plaintiff's inconsistent use of and reliance on a cane; and (3) the ALJ failed to explain adequately the reasons he did not adopt Dr. Hompland's assessed physical limitations and, therefore, the ALJ's "findings are incomplete and therefore inadequate for judicial review."  (Doc. # 12 at 18-20.)

7

Defendant asserts that the ALJ properly accorded "some weight" to

Dr. Hompland's opinions for the following reasons: (1) the ALJ properly pointed to some

inconsistencies between Dr. Hompland's November 2006 Medical Source Statement

and Dr. Hompland's treatment notes concerning Plaintiff's use of a cane to ambulate;

and (2) the ALJ reasonably found that Dr. Hompland's treatment notes did not support

total disability.  (Doc. # 14 at 23.)  Further, Defendant asserts that the ALJ did not need

to provide specific and legitimate reasons for rejecting Dr. Hompland's disability opinion

in the January 2008 Med-9 Form because that opinion is not a true medical opinion, is

merely a brief statement on a medical form, and does not contain a judgment about the

nature and severity of Plaintiff's physical limitations.  (Doc. # 14 at 22-24.)

Pursuant to 20 C.F.R. § 404.1527(d), the Commissioner will give controlling

weight to a treating source's opinion on an impairment's nature and severity if it "is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] record."  *See also* S.S.R. 96-

2P, at *2 (1996) ("It is an error to give an opinion controlling weight simply because it is

the opinion of a treating source if it is not well-supported by medically acceptable clinical

and laboratory diagnostic techniques or if it is inconsistent with the other substantial

evidence in the case record.").  Further, brief statements on medical forms that do not

contain any judgment about the nature and severity of the claimant's physical

limitations, or any information about the activities the claimant could perform, are not

true medical opinions.  *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008)

(discussing a mental status form completed by treating source); *see also* 20 C.F.R. § 404.1527(a).  To the extent that medical sources offer opinions that a claimant is disabled, the Commissioner looks to whether the medical findings and other evidence support the disability opinion.  20 C.F.R. § 404.1527(e)(1).

In the instant case, the ALJ expressly accorded "some weight" to the opinions of Dr. Scott Hompland because "some of the opinions are inconsistent[.]"  (AR 15.) In particular, the ALJ correctly noted the following: (1) on January 3, 2008, Dr. Hompland noted that Plaintiff ambulated with a cane but could ambulate reasonably comfortably and occasionally forgot to use his cane; and (2) Dr. Hompland's records, which reflected Plaintiff's daily functioning with medication and Plaintiff's ability to drive, participate in aquacize, care for his grandson, exercise at home, and engage in activities of daily living, do not support total disability.  (AR 14-15.)

The ALJ also determined that Dr. Hompland's opinions contained within the November 2006 Medical Source Statement and the January 2008 Med-9 Form were inconsistent.  (*Id.*)  Even if Plaintiff is correct that the ALJ incorrectly found inconsistencies between these two medical forms, this finding was not the sole basis for the ALJ's decision to accord only some weight to Dr. Hompland's opinions and, therefore, the at-issue inconsistencies amounts to harmless error.  The Court finds that the ALJ articulated sufficient reasons for according only some weight to Dr. Hompland's opinion.  Further, per *Cowan*, the January 2008 Med-9 Form is not a true medical opinion because it did not contain Dr. Hompland's judgments about the nature and

severity of Plaintiff's physical limitations, or any information about the activities the activities Plaintiff could perform.  The Med-9 Form simply contains a checked-box next to the language, "I find this individual is not totally disabled but does have a physical or mental impairment that substantially precludes this person from engaging in his/her usual occupation.  This condition has been or will be for a period of six (6) months or longer."  (AR 381.)

Additionally, Plaintiff asserts that, had the ALJ adopted Dr. Hompland's assessed physical limitations, as set forth in the November 2006 Medical Source Statement, which indicate that Plaintiff could only work on a part-time basis, the ALJ would have had to find Plaintiff disabled pursuant to Social Security Ruling 96-8p, because he would not be able to engage in substantial gainful activity on a "regular and continuing basis."[4] However, as already noted, the ALJ determined that Dr. Hompland's exam notations of Plaintiff's daily activities do not indicate Plaintiff's inability to work on a regular and continuing basis.  For these reasons, despite Plaintiff's contrary contention, the Court finds no error in the ALJ's conclusion that Dr. Hompland's records "do not support total disability."[5]

---

[4]  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  S.S.R. 96-8p; *see also Proctor v. Astrue*, 665 F. Supp. 2d 1243, 1251 (D. Colo. 2009) (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).

[5]  At the November 29, 2009 Hearing before this Court, Plaintiff asserted error in the ALJ's use of the phrase, "total disability" because, in Plaintiff's view, "the idea of 'total disability' is not part of the Social Security Act" and a claimant could "still be considered disabled under the definition of the [Act]" where he or she performs work "at less than substantial gainful activity levels."  (Rough Transcript of 11/29/09 Hearing, 09:11:00-09:11:44).

2.    Dr. Steve Kolpaks and Michele Lande, FNP

On July 8, 2009, Michele Lande, FNP and Internist Steve Kolpeck, M.D. with

Denver Health Medical Center, completed a "Medical Source Statement of Ability To Do

Work-Related Activities (Physical)."  They assessed several physical limitations, which

the ALJ noted in his November 18, 2009 Decision.  (AR 16-17, citing Ex. 16F at AR

600-606.)  However, as Plaintiff duly notes, the ALJ failed to indicate what weight, if

any, he accorded the July 8, 2009 opinions of Kolpaks and Lande.  (Doc. # 12 at 20.)

Additionally, although the ALJ's RFC differs from Dr. Kolpaks's assessed physical

limitations in a number of ways, the ALJ failed to provide any explanation for such

differences.

Plaintiff asserts that Nurse Lande and Dr. Kolpaks were Plaintiff's treatment

providers at Denver Health.  Accordingly, Plaintiff contends that the ALJ's failure to

indicate the weight he accorded Nurse Lane and Dr. Kolpaks's July 8, 2009 Medical

Source Statement "leaves the Court with a decision whose basis is unclear due to

---

As set forth in 20 C.F.R. § 416.905(a) and as previously noted, "disability" is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  To meet this definition, [a claimant] must have a severe impairment(s) that makes [him or her] unable to do [his or her] past relevant work [   ] or any other substantial gainful work that exists in the national economy."

While at least this portion of the Act itself may not use the phrase, "total disability," a claimant is only entitled to benefits upon demonstration of a complete inability, for a period of 12 months or longer, to engage in substantial gainful activity, *i.e.*, work for 8 hours a day, for 5 days a week.  As noted above, and later in this decision, the evidence supports the ALJ's finding that Plaintiff is not totally disabled, or completely unable to engage in substantial gainful activity.

lack of adequate findings to support it." (*Id.* at 20).  In defense of the ALJ's failure, Defendant asserts that (1) there is no evidence in the record that either were treating sources and, thus, entitled to controlling weight and (2) the opinion is not well-supported by clinical or laboratory techniques and, therefore, not entitled to controlling weight. (Doc. # 14 at 21.)

At the outset, the Court notes that the Commissioner need not, but **may** consider a nurse practitioner's opinions concerning Plaintiff's limitations.  *See* 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e) (stating that while a nurse practitioner is not an "acceptable medical source" under the regulations, a nurse practitioner does qualify as an "other source" whose opinions may be considered).  Further, with respect to disability determinations, "[a] physician's opinion [concerning whether a claimant is disabled] is not dispositive, because the final responsibility for determining whether a disability exists is reserved for the Commissioner.  Under the appropriate regulations, the opinion of a nurse practitioner is entitled to even less weight." *Cathey v. Barnhart*, 61 F. App'x 584, 586-87 (10th Cir. 2003) (unpublished) (internal citation omitted) (citing 20 C.F.R. § 404.1513(a); *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000)). Because consideration of a nurse practitioner's opinions is within the fact finder's discretion, the Court's analysis of the ALJ's treatment of the July 8, 2009 Medical Source Statement will focus on the regulations as they apply to treating physicians' opinions and whether Dr. Kolpaks is, as Plaintiff contends, a treating physician.

Generally, a treating physician's opinions are entitled to controlling weight because of the treating physician's "unique perspective to medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).  As the Tenth Circuit has noted, "[t]his requires a relationship of both duration and frequency.  'The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'" *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)).  Further, "a longstanding treatment relationship provides some assurances that the opinion has been formed for purposes of treatment and not simply to facilitate the obtaining of benefits. A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source." *Id.* at 762-63.

At the November 29, 2010 Hearing before this Court, Plaintiff argued that Dr. Kolpaks should be deemed a treating source because he is listed as Plaintiff's primary care physician, either as the sole physician or along with a Dr. Dimitriy Levin, on numerous occasions.  (*See, e.g.*, AR 464, 465, 467, 469, 471, 475, 477-479, 485.)  The Court finds that substantial evidence in the record supports a finding that Dr. Kolpaks

was one of Plaintiff's primary care physicians.  Beyond being listed on several Denver Health records as one of Plaintiff's primary care physicians, Dr. Kolpaks's signature appears on several of the records.  (*See*, *e.g.*, AR 470 (treatment record), 477 (treatment record), 479 (prescription refill request), 485 (treatment record)).  Further, Dr. Kolpaks is listed as at least one of Plaintiff's treating physicians during a seven-month period spanning from August 2008 through March 2009, and he did not complete the at-issue medical source statement until July 8, 2009.  Moreover, some of the cited documents suggest that Dr. Kolpaks ordered tests or prescribed medication.  (*See*, *e.g.*, AR 466 (urine analysis results), 475 (cholesterol test results), and 479 (prescription refill authorization).)

In sum, the evidence indicates that Dr. Kolpaks prescribed treatment for Plaintiff, was involved to some extent in Plaintiff's follow-up treatment, and has become familiar with the "longitudinal picture of [the claimant's] impairment," at least over a span of months.  20 C.F.R. § 416.927(d)(2)(i), (ii).  Accordingly, the records suggest that Dr. Kolpaks is a treating source of Plaintiff and that Plaintiff did not see Dr. Kolpaks merely for the purpose of obtaining benefits.  *Cf. Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003) (finding that the at-issue physician was not the plaintiff's treating physician where the record contained only one document, namely a referral form, prepared by the at-issue physician, the form did not indicate whether the physician performed any examinations, and the plaintiff did not identify the at-issue physician as a treating physician).

Defendant asserts that, even if Dr. Kolpaks is Plaintiff's treating source, pursuant to 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-2p, his opinion is not entitled to controlling weight because it is not well-supported by clinical or laboratory techniques and is inconsistent with record evidence.  The Court agrees.  Dr. Kolpaks's disability determination is not supported by the objective evidence it cites, namely a June 2008 MRI.  This MRI shows no nerve root compression, which compression is a necessary component of nerve-related spinal disorders, such as Plaintiff's radiculitis.  The physical limitations, contained in Dr. Kolpaks's opinion, are based on Plaintiff's contradictory statements concerning his varying degrees of physical activity.

Although, the ALJ must engage in a controlling-weight test when analyzing treating source opinions, pursuant to 20 C.F.R. § 404.1527(d)(2) and as set forth in *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), the ALJ's failure to articulate his analysis of Dr. Kolpaks's opinions "is harmless in light of the fact that no reasonable fact finder could conclude" that Dr. Kolpaks's opinions were supported by objective evidence in the record.  *Marshall v. Astrue*, 315 F. App'x 757, 760 n.2 (10th Cir. 2009) (unpublished); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (applying the principle of harmless error to the social security context).  Accordingly, the Court finds no reason to remand the case to the Commissioner for further consideration of Dr. Kolpaks's opinion.

3.   Nurse Practitioner James Sampson

On February 18, 2008, Nurse Practitioner James Sampson completed a Colorado Department of Human Services disability form ("Med-9 form"), pursuant to which she opined that Plaintiff would be disabled for a period of 6-8 months as a result of chronic back pain, neuropathy, and foot drop.  (AR 585-86.)  However, Nurse Sampson did not cite to any records or objective medical evidence in support of her opinion.

The ALJ did not discuss this form or indicate what weight he accorded it in his November 18, 2009 Decision.  Plaintiff asserts that this failure amounts to an error that requires a remand to the Commissioner.  (Doc. # 12 at 21.)  Defendant asserts that the ALJ had no regulatory obligation to discuss the weight he accorded to the opinion of Nurse Sampson, who is not an "acceptable medical source," but an "other source," under 20 C.F.R. § 404.1513(d), and whose opinion concerned whether Plaintiff was disabled, as opposed to Plaintiff's physical limitations.

"Information from [ ] 'other sources' [such as nurse practitioners] cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an 'acceptable medical source' for this purpose.  However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  S.S.R. 06-03p, 2006 WL 2329939, at *2.

16

In this case, Plaintiff has not directed the Court's attention to any records that indicate whether Nurse Practitioner Sampson was one of Plaintiff's treating sources. Therefore, the February 18, 2008 Med-9 form appears to be the only medical form attributable to Nurse Sampson.  Because Nurse Sampson does not appear to be one of Plaintiff's treating sources, no indication exists that Nurse Sampson's disability determination, as expressed on the Med-9 form is based on special knowledge of Plaintiff.  Further, the Med-9 form itself provides scant information regarding the severity of Plaintiff's impairment.  Moreover, as previously stated, the Med-9 form is not a true medical opinion because it did not contain judgments about the nature and severity of Plaintiff's physical limitations, or any information about the activities the activities Plaintiff could perform.  *See* Section III(A)(1), above (citing *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008); 20 C.F.R. § 404.1527(a)).  Accordingly, the Court finds no error in the ALJ's failure to discuss the weight he accorded Nurse Sampson's February 18, 2008 assessment of Plaintiff.

    4.    <u>Dr. David Benson</u>

On March 21, 2008, Dr. David Benson conducted a psychological evaluation of Plaintiff, at the request of the State Department of Vocational Rehabilitation. (AR 440-451.)  Dr. Benson opined that Plaintiff will learn most effectively through training that is experiential and hands-on.  (AR 448.)  Dr. Benson further concluded that Plaintiff's depression and anxiety "is partly incapacitating and reduces his chances of clearly seeing what he needs to do or addressing his problems," he has "poor response to

stress and even minor life stresses will tend to overwhelm him," he "doesn't accurately understand his circumstances and may overestimate his limitations," and "he is so preoccupied with his problems . . . that he has difficulty performing adequately." (AR 448-449.)  Dr. Benson further noted that Plaintiff "will have difficulty obtaining employment with his combination of problems," he "requires intensive and specialized training not required by the average worker to learn job tasks," and his "memory and concentration deficits interfere significantly with remembering job instructions and performing job tasks."  (AR 449-450.)  Nevertheless, Dr. Benson concluded that, because of Plaintiff's "good intellectual ability, there are many potential options for him and finding a good match between his need to do jobs that are more performance oriented and yet within his physical limitations seems the key to his returning to a productive role in the work world."  (AR 450.)

In his November 18, 2009 Decision, the ALJ noted that Dr. Benson's opinions were contradictory.  On the one hand, Dr. Benson concluded that Plaintiff would be severely limited in obtaining employment.  On the other hand, he concluded that Plaintiff might have potential options due to his good intellectual ability.  (AR 17.)  As such, the ALJ accorded Dr. Benson's opinions "some weight."  (*Id.*)

Plaintiff objects to the weight the ALJ accorded Dr. Benson's opinions, and asserts that the ALJ failed to incorporate Dr. Benson's assessed mental limitations into the RFC findings.  Plaintiff asserts that these errors require, at a minimum, remand to the Commissioner for further findings.

18

Contrary to Plaintiff's contentions, the ALJ did incorporate Dr. Benson's assessed mental limitations in the RFC.  In his RFC assessment, the ALJ expressly accommodated Dr. Benson's assessed limitations, namely that Plaintiff has the ability to perform sedentary work with no requirement to understand, remember, or carry out more than detailed instructions.  (AR 13.)  Further, the ALJ gave Plaintiff "every benefit of the doubt" and found the following limitations: (1) moderate restrictions on activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration.  (AR 19.)

With respect to Plaintiff's objection to the weight the ALJ accorded Dr. Benson's opinion, the Commissioner must give substantial weight to the treating physician's opinion and less weight to the opinions of doctors, such as Dr. Benson, who have examined but not treated the claimant.  *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995); *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987); *Higgins v. Barnhart*, 294 F. Supp. 2d 1206, 1211 (D. Kan. 2003).  The opinions of examining sources, such as Dr. Benson, are to be evaluated based upon the same regulatory factors as treating source opinions, which are set forth in 20 C.F.R. §§ 404.1527(d); 416.927(d).  *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); *Goatcher v. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).  Though the ALJ must consider all these factors, he need not discuss all of them.  *See Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009) (unpublished).  The ALJ's decision must be specific enough to

make clear to subsequent reviewers the weight given to the medical source's opinion and the reasons for that weight.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

In the instant case, the Court finds that the ALJ's November 18, 2009 Decision is specific enough to make clear to this Court the weight given to Dr. Benson's opinion (*i.e.*, "some weight") and the reasons for that weight (*i.e.*, noted contradictions within Dr. Benson's opinion).  Accordingly, the Court finds no error in the ALJ's assessment and treatment of Dr. Benson's opinion.

**B.     Second and Third Issues: Whether the ALJ Failed to Substantiate His Finding that Jobs Existed in Substantial Numbers and Failed to Identify Adequately the Jobs He Cited to Deny Plaintiff's Claim at Step 5**

1.     The ALJ's Findings That Jobs Existed in Substantial Numbers

At the August 6, 2009 Hearing, the ALJ elicited testimony from the vocational expert that, based on Plaintiff's mental and physical limitations, Plaintiff could perform work as an order clerk of food and beverages, for which 100,000 jobs exist across the country, or as an assembler, for which more than 150,000 jobs exist across the country. (AR 49-50.)

Plaintiff argues that, although the ALJ ascertained the availability of these jobs nationally, the ALJ erroneously failed to ascertain the availability of these jobs "in the region in which [Plaintiff] lives or any other regions of the country."  (Doc. #12 at 25.) The Court finds Plaintiff's argument unavailing.

20

The Tenth Circuit considered and rejected a similar argument in *Raymond v. Astrue*, 356 F. App'x 173, 177 (10th Cir. 2009) (unpublished).  In doing so, the court noted that "controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy." *Id*. The Social Security Act, 42 U.S.C. § 423(d)(2)(A), instructs that an individual shall be deemed disabled if he cannot "engage in any other kind of substantial gainful work which exists in the national economy, **regardless of whether such work exists in the immediate area**." (Emphasis added; *see also* 20 C.F.R. § 416.966(c).)  The Act further states that work exists in the national economy if it "exists in significant numbers either in the region where such individual lives or in several regions in the country." *Id*.  The Tenth Circuit has "never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[.]'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).  Further, Plaintiff has not pointed to any authority, and the Court is aware of none, in which the Tenth Circuit instructed courts to engage in a multi-factor analysis where the availability of jobs on the national level has been identified.  *Cf. Trimiar*, 966 F.2d at 1330 (applying a multi-factor analysis where only the availability of jobs on the **regional** level was identified).

The Court is satisfied that the ALJ properly determined that the jobs identified by the vocational expert exist in significant numbers in the national economy.

2.    <u>Whether the ALJ Failed to Identify Adequately the Cited Jobs</u>

During the August 6, 2009 Hearing, neither the ALJ nor the vocational expert

identified the actual *Dictionary of Occupational Titles (DOT)'s* job code numbers for the

cited jobs.  Plaintiff contends that "[t]his failure makes it impossible to identify on which

job titles the vocational expert based his testimony" and this error prevents the

reviewing court from "assess[ing] whether, in fact, the cited jobs could be performed

within the limitations given in the hypothetical question asked of the [vocational expert]."

(Doc. # 12 at 27.)  At the November 29, 2010 Hearing before this Court, Plaintiff further

elucidated this argument by stating that knowledge of the DOT job codes will enable

any subsequent reviewer to refer to the *DOT* and ascertain the specific requirements

of the identified jobs.  The Court finds this argument unavailing.

As Plaintiff duly acknowledges, the vocational expert testified that his conclusions

were consistent with the DOT job definitions.  While Plaintiff correctly states that the ALJ

must resolve any conflict between the ALJ's testimony and the DOT job definitions,

Plaintiff has not directed the Court's attention to any conflict, and no such conflict is

readily apparent in the record.  The vocational expert identified two broad categories of

jobs based on the ALJ's hypothetical, namely, as previously noted, a food and beverage

order clerk and an assembler.  Logically, a conflict does not arise from the fact that

Plaintiff's physical and mental limitations may render him unable to perform *some* types

of order clerk or assembler jobs.  A conflict does arise if Plaintiff is unable to perform

*any* order clerk or assembler jobs.  The vocational expert's testimony negates the possibility of the latter scenario.

Accordingly, the Court finds no error in how the cited jobs were identified.

**C.     Fourth and Fifth Issues: Whether the ALJ Erred at Step 3 By Failing to Cite the Specific Listings He Considered and By Failing to Find that Plaintiff's Condition Met or Equaled Listing 1.04**

In the November 18, 2009 Decision, at step three, the ALJ concluded that Plaintiff "has no impairment or combination of impairments which meets the criteria of any of the listed impairments in Appendix 1 of the Regulations (20 C.F.R., Part 404, Subpart P, Appendix 1)."  (AR 13.)  In support, the ALJ noted, in pertinent part, that none of the treating or examining physicians found impairments that were equivalent in severity to the criteria of any listed impairment.  (*Id.*).

Plaintiff's objections to the ALJ's step three findings appear to relate solely to his spine disorder.  Plaintiff asserts that the ALJ's step three findings are "insufficient for judicial review."  (Doc. # 12 at 27-28.)  Plaintiff also asserts that his "disorder of the spine," is evidenced by a June 24, 2008 MRI that reveals a disc protrusion that abuts, but does not deform the nerve root, as well as by the pain he experiences and his motor loss.  (*Id.* at 29.)  Finally, Plaintiff asserts that the ALJ failed to consider an August 27, 2008 MRI that evidenced continuing problems with the nerve root, namely chronic left L5 radiculopathy.  (Oral Argument at Nov. 29, 2010 Hearing).

1.      Whether the ALJ Erred at Step 3 By Failing to Cite the Specific
        Listings He Considered

The Court finds that the ALJ fulfilled his duty "to discuss the evidence and explain

why he found that appellant was not disabled at step three." *Clifton v. Chater*, 79 F.3d

1007, 1009 (10th Cir. 1996).  "[A]n ALJ's findings at other steps of the sequential

process may provide a proper basis for upholding a step three conclusion that a

claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross v.*

*Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).  "Neither *Clifton's* letter nor spirit require a

remand for a more thorough discussion of the listings when confirmed or unchallenged

findings made elsewhere in the ALJ's decision confirm the step three determination

under review." *Id*. at 734.  In the instant case, as discussed above, the ALJ thoroughly

analyzed the medical sources' opinions at step four.

Although the ALJ concludes in a summary fashion that Plaintiff's impairments do

not meet or equal any listed impairment, Plaintiff fails to recognize that the ALJ more

thoroughly supports his conclusion in his assessment of Plaintiff's RFC at step four,

during which he comprehensively discusses much of the pertinent evidence in the

record.  The ALJ recognized that the objective evidence supports a finding that Plaintiff

"has degenerative disc disease, with radiculopathy and foot drop . . . that could cause

pain and other symptoms." (AR 19.)  However, the ALJ also noted that a June 24, 2008

MRI showed no nerve compression, and treatment notes reflected that a brace and

orthotic helped with Plaintiff's foot drop problems.  (*Id*.)  Although Plaintiff correctly notes

that the ALJ did not discuss the August 27, 2008 MRI, the Court notes that the MRI

does not support a conclusion that Plaintiff's impairments meet or equal a listed impairment.  A report interpreting the August 27, 2008 MRI specifically notes "no acute changes" to Plaintiff's L5 radiculopathy impairment.  (AR 487.)  The ALJ did not err in failing to discuss his consideration of the August 27, 2008 MRI.  Accordingly, the Court finds no error with the ALJ's analysis at step three.

    2. <u>Whether the ALJ Erred by Failing to Find Plaintiff's Condition Met or Equaled Listing 1.04</u>

  "In most instances, the requirements of listed impairments are objective, and whether an individual's impairment manifests these requirements is simply a matter of documentation."  SSR 96-5p, 1996 WL 374183, at *3.  Evidence of nerve compression must exist for nerve-related spine disorders to qualify as a listed impairment under the regulations.  See 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 1.04.  In the instant case, none of the medical records evidence any nerve compression.  As previously noted, neither the June 24, 2008 MRI nor the August 27, 2008 MRI shows nerve root compression.[6]  Accordingly, the Court finds that the ALJ did not err in concluding that Plaintiff's spine disorder does not meet or equal a listed impairment.

---

  [6]  The word, "compression" implies an alteration in form.  *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 467 (2002) ("compression": "2. the quality or state of being compressed, pressed in, together, or upon or of being concentrated or condensed").  Accordingly, the absence of any deformity in the left S1 nerve root suggests no nerve compression.

**D.      Sixth Issue: Whether the ALJ Failed to Base His Findings Regarding Plaintiff's Credibility On Substantial Evidence**

In the November 18, 2009 Decision, the ALJ determined that Plaintiff's "physical problems are not as great as alleged" and concluded that Plaintiff provided inconsistent statements regarding his daily activities, performance of light chores, and the care he provides to his grandsons.  (AR 19.)  The ALJ comprehensively reviewed Plaintiff's testimony concerning his daily activities, as well as Plaintiff's pain complaints and physical performance during doctors' evaluations.  The ALJ also pointed to instances when Plaintiff ambulated reasonably comfortably with a cane, which he did not consistently use, and noted that Plaintiff had reported his pain-level generally to be a five on a ten-point scale.  (*See*, *e.g.*, AR 14, 15, 17, 19.)

Plaintiff objects to the ALJ's conclusion that Plaintiff's physical problems are not as great as he has alleged and asserts that the ALJ failed to base his analysis of Plaintiff's credibility on substantial evidence.  (Doc. # 12 at 31-34.)

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).  "Substantial evidence is adequate relevant evidence that a reasonable mind might accept to support a conclusion." *Kepler v. Chater*, 68 F.3d 387, 388-89 (10th Cir. 1995) (citing *Hargis v. Sullivan*, 945 F.2d

26

1482, 1486 (10th Cir. 1991)).  "Subjective pain must be evaluated with due consideration for credibility, motivation, and medical evidence."  *Nieto v. Heckler*, 750 F.2d 59, 61-62 (10th Cir. 1984).

Plaintiff first contends that the ALJ erred in basing his credibility determination on evidence of Plaintiff's sporadic ability to perform basic activities of daily living or household chores.  (Doc. # 12 at 32; citing to *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987).)  However, unlike in *Frey*, the ALJ did not disregard the treating physicians' medical records and notations.  Rather, in the instant case, the ALJ pointed to statements in treating and reviewing physicians' notes that were inconsistent with Plaintiff's pain complaints or with Plaintiff's statements regarding diminished daily activities.  For example, the ALJ pointed to January-April 2009 treatment notes from Ellen Gease, Ph.D., a psychologist, in which Dr. Gease noted Plaintiff's increased activities, assistance with light housekeeping chores, and caring for his grandson three days per week, all of which contradicted Plaintiff's testimony before the ALJ.  (AR 18, discussing Ex. 13F, AR 531-537.)  Further, Plaintiff had taken aquacise classes, but stopped only due to an inability to pay for the classes.  (AR 18).  As another example, the ALJ referred to Dr. Benson's Psychological Evaluation of Plaintiff, which includes a notation that Plaintiff "doesn't accurately understand his circumstance and may overestimate his limitations based on the struggles he has had."  (AR 449.)

Based on the foregoing, the Court finds that the ALJ based his findings regarding Plaintiff's credibility on substantial evidence.

**IV.      CONCLUSION**

The ALJ's denial of Plaintiff's application for social security disability and

supplemental income benefits is supported by substantial evidence in the record and

free of legal error meriting reversal.

Accordingly, IT IS ORDERED THAT:

(1)      The ALJ's denial of social security disability and supplemental income

benefits is AFFIRMED; and

(2)      Each party shall pay its own costs and attorneys' fees.

DATED:  January __06__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge